Sugar and another *vs.* Davis and another.

No. 68.—SUGAR & BROTHER, plaintiffs in error, *vs.* SACKETT, DAVIS & POTTER, defendants in error.

[1.] Our Acts authorizing bail may be said to be in derogation of common right. When, by virtue thereof, an affidavit is made, the Statute should be strictly pursued, as well in consideration that the Statute permits a party to be deprived of his liberty by the *ex parte* act of another, as to guard the affiant against misconception of the law. But a reasonable application of this principle is, (where a form is not prescribed,) that a substantial compliance with the terms of the Statute, according to its clear import, is all that is required.

[2.] Where the affiants in such bail case make oath, that "the defendants are indebted to them" in the said sum sworn to, and "that they apprehend the loss of said sum, &c. unless the defendants are held to bail:" *Held*, that this is a substantial compliance with the terms and import of the Statute, requiring the plaintiffs to swear "to the amount claimed" by them, and that they apprehend its loss "if the defendants be not held to bail."

[3.] A commissioner for this State, in New York, duly appointed, is empowered by our law to administer an oath in any case in which a Magistrate, resident in our State, may administer it. He has authority, therefore, to take an affidavit in a bail case.

[4.] Where the evidence shows that a defendant (who has been arrested on a bail process, issuing in a suit upon an open account against him and another) admitted to the arresting officer, and in the hearing of another person, that the account was correct; which account, however, was not before him at the time, but the amount was stated to him, and this, and the other circumstances attending the arrest, were submitted to the Jury: *Held*, that there was some testimony which might be relied on as evidence, that the admission related to the account which was the subject of the suit; and that this question was properly submitted to the Jury by the Court.

Debt and bail, in Stewart Superior Court. Tried before Judge IVERSON, April Term, 1853.

This was an action of debt and bail, brought by Sackett, Davis & Potter, a mercantile firm of the City of New York, against Goodman Sugar & Brother, merchants residing in the

Town of Lumpkin, Stewart County, on a note and open account.

On the trial, counsel for defendants moved the Court to dismiss the bail, upon the grounds:

1st. That the plaintiffs did not, in their affidavit to hold to bail, swear that they "claimed" of defendant, the amount sworn to.

2d. Because said bail affidavit did not, in the terms of the Statute, state that plaintiffs have reason to apprehend the loss of the said sum, or some part thereof, "if the defendants are not held to bail."

3d. Because the affidavit to hold to bail in said action was not sworn to before, and attested by an officer authorized by the Statute to administer bail affidavits—the affidavit having been made before a commissioner for the State of Georgia, in the City of New York.

The Court overruled the motion, and counsel for defendants excepted.

Counsel for plaintiff introduced a witness, John M. Scott, Deputy Sheriff of Stewart County, who swore that immediately after arresting defendants, one of them, to wit: Goodman Sugar, said to him that the debt was just and correct; but he did not examine the accounts or look at the items; the amount of the account only was stated to him; but that he offered plaintiff to pay the debt, if he would take notes, and that he was very much agitated at the time."

Plaintiffs also offered in evidence, the testimony of John G. Singer, who stated, that after the defendants had been arrested, one of them, to wit: Goodman Sugar, told him, that the debt was just and correct; but, that the accounts were not present, and no amounts were mentioned.

The case being closed, counsel for defendants requested the Court to charge the Jury, that the two open accounts sued upon, had not been sufficiently proven. The Court refused so to charge; but, on the contrary, charged the Jury, that if they believed the witnesses introduced by the plaintiffs, and found that one of the defendants had admitted that the account sued

on was just and correct, they should find for the plaintiffs. To which counsel for defendants excepted.

Upon these several exceptions error was assigned.

TUCKER, for plaintiffs in error.

J. M. CLARK, for defendants in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The two first assignments of error in this case, proceed upon the ground, that in the terms of the bail affidavit, there is a departure from the phraseology of our Statute of 1799, authorizing this proceeding ; and that, inasmuch as this is a Statute in derogation of the Common Law, and must be strictly pursued, such variance is fatal.

If this be not, strictly speaking, a Statute in derogation of the Common Law, it is, at all events, in derogation of common right ; and on this account and others, perhaps, should be, in the proper sense of the term, strictly pursued.   Where a party is to be deprived of his liberty by the *ex parte* act of another, as well as " to guard those who make the affidavit against any misconception of the law," (*Lord Ellenborough, in Taylor vs. Forbes,* 11 *East.* 315,) " the leaning should be always to great strictness of construction."

Now, while recognizing this principle, we insist upon giving it a reasonable application.

That reasonable application to such a Statute, requiring affidavit to be made, if the Statute *do not prescribe the form,* but only directs what shall be the necessary elements of the affidavit, is, in our opinion, that there must be a substantial compliance with the requirements of the Statute, according to its direct terms and clear import.   *Mayor, &c. vs. Hartridge,* 8 *Ga. R.* 23.   That is to say, that the Statute cannot be so construed as to allow a departure from its letter, which, though not within its import, is yet within its spirit ; or so construed as to afford a remedy within its spirit which is not within its

terms or import ; and that, in this sense, " it will not be extended further than required by its letter." *Lock vs. Miller*, 3 *Stew. & P*. 14.

[2.] It is plain, that in the words and terms employed in this affidavit, there is no departure from the import of the terms used in the Statute—the oath made by the plaintiffs, that "the defendants are indebted to them in the amount sworn to," being a substantial compliance in import, in tenor, and effect, with the requirements of the Statute, that the plaintiff shall swear " to the amount claimed by him," and the words "unless the defendants are held to bail," used in the affidavit, being in import the same with the words, " if the defendant be not held to bail," which are the words of the Statute.

[3.] It is next insisted that the affidavit was not sworn to before any officer having authority to administer it, inasmuch as the Statute requires such affidavit, when made out of the State, to be taken before a Judge or Justice of the Superior Court of the State where it is taken, and the authority of the officer administering it to be authenticated by the Governor's certificate and the seal of the State whence it shall come, and that this requirement too, must be strictly pursued.

This is correct, unless subsequent legislation modifies or changes the law in this respect.

Such subsequent legislation, we think, is found in the Act of 1829, authorizing the Governor to appoint commissioners for the State, in other States of the Union, and giving to such commissioner " full power and authority to administer an oath or affirmation, to any person who shall be willing to make such oath or affirmation before him," and declaring such oath or affirmation "to be as good and effectual to all intents and purposes, as if taken by any Magistrate resident in this State, and competent to take the same." *Cobb's N. Dig*. 173, 174.

These terms are general, and must apply to *any* affidavit taken by any person, in any case. We think, therefore, that it might very well be said of this Act, that its effect is to make

the Commissioner in N. York a Justice of the Peace, *ex officio*, of our State, is to extend the jurisdiction and sovereignty of the State, *pro hac vice*, to the office of that commissioner in New York, and thus, in legal effect, to enable the affiant within the State, as it were, to make his affidavit before a Justice of the Peace of the State ; in this way substantially complying with the Act of 1799.

If it be thought that it will be too liberally construing the latter Act, so to apply its provisions, then we reply, if this construction be not correct, the Act of 1829 is clearly cumulative of the Act of 1799, and gives to the commissioner authority out of the State, to administer an oath *in any case.* The affidavit was, therefore, rightly administered.

To our minds, this suggestion is not weakened by the fact that the Legislature seems to have entertained a similar view to that pressed upon us by the counsel for the plaintiff in error, because of its having passed an Act in 1839, (*Cobb's N. Dig.* 86,) allowing and authorizing affidavits to be made by the non-resident creditor before a commissioner for the State, or before any Judge or judicial officer, &c. in cases of attachment, &c.

It was, no doubt, deemed expedient in so important a matter, by direct legislation to remove all doubt as to the authority of the commissioner administering the oath in cases of attachment. The same exigency did not exist as to the bail affidavit, because the Act of 1799, had already plainly provided a method by which such affidavit could be made by the non-resident creditor ; and it was easy for persons, by pursuing this Act, to avoid any question as to the authority of the Magistrate in administering the oath.

[4.] The last assignment of error relates to the charge of the Court, as to the admissions made by one of the plaintiffs in error, that the account sued on was correct—it being insisted by his counsel, that the account was not submitted to him when the admissions were made ; that he did not see the items, and therefore, there was no proof of the identity of the account, the subject of the suit.

Nicholson and Wife *vs.* Wilborn and another.

This was entirely a question of evidence, and as such, was submitted by the Court to the Jury.    There was some evidence before the Jury, from which they could determine the effect of the defendant's admission, whether or not he had previously seen the account sued on, and whether or not his admissions related to it.    One of the witnesses says, that the amount of the account was stated to this defendant; the names of the merchants who were suing him, and the character of the claim, were undoubtedly before him at the time ; and these, taken in connection with all the circumstances of the transaction in evidence, might have been very properly relied on before the Jury, we readily perceive as evidence, that the admission related to this account.

Let the judgment be affirmed.